MATTER OF FLORES-MALDONADO

In EXCLUSION Proceedings

A-13039936

*Decided by Board July 30, 1962*

(1) Retention requirements of section 301(b), Immigration and Nationality Act, as amended by section 16, Act of September 11, 1957, may be satisfied by a United States citizen who commutes regularly from his residence in Mexico to his employment in the United States, even though he does not take up residence in the United States until after he has reached his 23d birthday.

(2) Continuous physical presence in the United States for at least five years within the meaning of section 301(b), Immigration and Nationality Act, as amended by section 16, Act of September 11, 1957, is computed on the basis of the number of hours actually spent in the United States each day, and does not require establishment of residence in the United States.*

(3) A commuter may continue to reside abroad under section 301(b), Immigration and Nationality Act, as amended by section 16, Act of September 11, 1957, provided his absences from the United States are less than twelve months in the aggregate during the period for which continuous physical presence is required. The establishment of a residence in the United States does not toll the physical presence requirements for retention of United States citizenship.*

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without visa.

The applicant, a native of Mexico, male, married, 23 years of age was issued a United States citizen's identification card on November 13, 1953. He presented his citizen's identification card when he attempted to enter the United States at El Paso, Texas on February 4, 1962. He was detained for a hearing before a special inquiry officer. An order entered by the special inquiry officer on March 5, 1962, excludes the applicant under section 212(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(20)). The special inquiry officer found that the applicant had lost his United States citizenship by failing to establish his residence in the United States prior to attaining the age of 23 years (section 301(b) of the Immigration and Nationality

---

*See also, *Matter of Bustillos-Ruiz*, Int. Dec. No. 1243, and Int. Dec. No. 1256.

Act; 8 U.S.C. 1401(b)). The applicant appeals from the order of exclusion.

The applicant was born in Mexico on August 22, 1938. He derived United States citizenship through his mother, who was born in California (Revised Statutes, 1993, as amended by the Act of May 24, 1934). The applicant concedes that he did not come to the United States to reside until September 28 or 29, 1961. Prior to that date he maintained his residence in Mexico but was employed in the United States.

The applicant defends on the ground that when he was issued his citizen's identification card on November 13, 1953, the immigration officer advised him that upon reaching the age of 23 years he would have to reside in the United States in order to retain his United States citizenship (R.H. p. 8). He testified that it was his impression that he had about a month or a month and a half after reaching his 23rd birthday to assume the required residence. Relying on the information given him by the immigration officer he did not remove his residence to the United States until September 28 or 29, 1961.

Loss of national by a person born outside of the geographical limits of the United States or its outlying possessions of parents one of whom is an alien and the other a citizen who has had ten years *physical presence* in the United States prior to the birth of such person[1] is governed by section 301(b) of the Immigration and Nationality Act· (8 U.S.C. 1401(b)). Section 301(b) provides that such person shall lose his United States nationality derived at birth "unless *he shall come to the United States* prior to attaining the age of 23 years and shall immediately following *any such coming* be continuously *physically present* in the United States for at least five years: Provided, that such *physical presence* follows the attainment of the age of 14 years and precedes the age of 28 years" (emphasis supplied).

Realizing that the five year continuous *physical presence* provision of section 301(b) as originally enacted created a hardship for many citizens born outside of the United States whose families continued to reside abroad the Congress enacted section 16 of Public Law 85–316 (Act of September 11, 1957).[2] Section 16 of the Act of September 11, 1957, provides that in the administration of section 301(b) (*supra*) "Absences from the United States of less than 12 months in the aggregate, during the period for which *continuous physical presence* in the United States is required, shall not be considered to break the continuity of such *physical presence*." (Emphasis supplied.)

---

[1] Paraphrased from section 301(a)(7) of the Immigration and Nationality Act (8 U.S.C. 1401(a)(7)).

[2] See U.S. Code Congress and Administrative News, Volume 2—85th Congress— 1st Sess—pp. 2019 and 2220.

The applicant was 15 years of age when issued a citizen's identification card on the occasion of his original entry at El Paso, Texas on November 13, 1953. According to the record he commuted regularly from his residence in Mexico to his employment in the United States during the period November 13, 1953, to September 28 or 29, 1961. He testified that he moved his family to El Paso, Texas on September 28 or 29, 1961, and that both of his children were born in El Paso. (p. 3 of Ex. 2.)

The applicant reached his 23rd birthday on August 22, 1961. He meets the first requirement set forth in section 301(b) (*supra*) in that "he (came) to the United States prior to attaining the age of 23 years." The issue before us is whether the applicant can qualify under that portion of section 301(b) as modified by section 16 of Public Law 85–316 which permits "Absences from the United States of less than 12 months in the aggregate" during the required five years of continuous *physical presence* in the United States between the ages of 14 and 28 years. If the applicant can qualify, then he was admissible as a citizen of the United States when he sought to enter on February 4, 1962, and not required to present an immigration visa. (Emphasis supplied.)

The special inquiry officer maintains that section 16 of Public Law 85–316 does not apply in this case because the applicant "did not take up any *residence* in the United States prior to September 28 or 29, 1961, which is subsequent to his having reached his 23rd birthday and, consequently, as he does not appear to have commenced a *residence* in the United States prior to his 23rd birthday, any break in *"residence* thereafter or absence thereafter has not occurred so as to make section 16 of (Public Law 85–316) applicable." (Emphasis supplied.) (p. 7 R.H.) According to the special inquiry officer's interpretation of both sections 301(b) and section 16 of Public Law 85–316 it is impossible for the applicant to acquire "five years of continuous *physical presence* in the United States" prior to attaining the age of 28 years because "he did not take up any *residence* in the United States prior to September 28 or 29, 1961" and for this reason the allowable "Absences from the United States of less than 12 months in the aggregate" during the period from his birthday on August 22, 1961, to August 22, 1966, cannot affect the applicant's case (p. 2, special inquiry officer opinion). (Emphasis supplied.)

The special inquiry officer's interpretation of both section 301(b) of the Immigration and Nationality Act and section 16 of Public Law 85–316 equates the term *"residence"* with the term *"physical presence."* He has read into these statutes a technical term not expressly set forth therein. (Emphasis supplied.)

The term "residence" is defined by section 101(a)(33) of the Immi-

gration and Nationality Act (8 U.S.C. 1101(a)(33)). It is defined as "the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." The term *"physical presence"* on the other hand is not defined in the Immigration and Nationality Act. It is found however in the suspension of deportation provisions of section 244(a) (8 U.S.C. 1254) as well as in sections 301(a), 301(b) *(supra)* and section 16 of Public Law 85-316 *(supra).* (Emphasis supplied.)

There is no express language in section 301(b) or section 16 of Public Law 85-316 that requires a citizen who derived his nationality under section 301(a)(7) to establish a *"residence"* in the United States during any five-year period following "the attainment of the age of 14 years and (preceding) the age of 28 years."[3] *Physical presence* within the meaning of section 301(b) and section 16 of Public Law 85-316 may be, but is not necessarily concurrent with or the same as *"residence"* a term expressly defined by section 101(a)(33) of the Immigration and Nationality Act. If Congress had intended that *"physical presence"* be equated with *"residence"* it could have done so by using the words "reside" or "residence" as it did in section 301(c) *(supra).* There is no requirement in the statute that such a citizen "shall come to the United States" with the intention of residing permanently. (Emphasis supplied.)

The applicant has been commuting from Mexico as a citizen since he obtained employment in the United States in November of 1953. Loss of nationality by a commuter who derived citizenship under section 301(a)(7) of the Immigration and Nationality Act (8 U.S.C. 1401(a)(7)) presents a mathematical problem by reason of the fact that *physical presence* in the United States must be computed on the basis of the number of hours the commuter is actually in the United States each day while traveling to, engaged in and returning from his employment. Under the amendment to section 301(b), enacted September 11, 1957 (Public Law 85-316, 8 U.S.C. 1401b), the commuter may continue to reside abroad provided his absences from the United States are less than 12 months in the aggregate during the period for which continuous *physical presence* is required. (Emphasis supplied.)

The question to be resolved in the instant case is whether it is mathematically possible for the applicant to establish five years of continuous *physical presence* in the United States prior to attaining the age of 28 years on August 22, 1966, inasmuch as he continued to commute from

[3] Although the applicant was born abroad subsequent to May 24, 1934, subsection (c) of section 301 of the Immigration and Nationality Act (8 U.S.C. 1401(c) has no application to his case because prior to the effective date of the Immigration and Nationality Act "he did not take up residence in the United States before attaining the age of 16 years."

25

Mexico until September 28, 1961, which is 37 days after he attained the age of 23 years on August 22, 1961. If the applicant's absences aggregate "less than 12 months * * * following any * * * coming (to the United States) * * * prior to attaining the age of 23 years" then such absences do not break the continuity of the required five years of *physical presence* in the United States (section 301(b)—Immigration and Nationality Act as amended by Public Law 85–316). (Emphasis supplied.)

The applicant testified that he works on Saturday (p. 11). Allowing four hours each day for travel and lunch, based on an eight hour work day six days each week, we conclude that the applicant was *physically present* in the United States for a total of 72 hours or three days each week. During the 37 day span between August 22, 1961, his 23rd birthday, and September 28, 1961, the day he moved his residence to the United States, the applicant was absent from the United States for a total of five Sundays plus 16 days during his regular work week or a total of 21 days overall. (Emphasis supplied.)

Accordingly when the applicant applied for admission on February 4, 1962, it was mathematically possible for him to establish five years of continuous *physical presence* in the United States prior to August 22, 1966, his 28th birthday, because within a five year period beginning on or about 21 days prior to his 23rd birthday on August 22, 1961, "he had come to the United States prior to attaining the age of 23 years and immediately following any such coming" he has been absent from the United States for a period of less than 12 months in the aggregate⁴ "during the period for which continuous *physical presence* is required." Under the circumstances the applicant was admissible as a citizen of the United States when he applied for entry on February 4, 1962. He was not required to present an immigration visa. (Emphasis supplied.)

The fact that the applicant established a "residence" in the United States on September 28 or 29, 1961, does not toll the requirement for retention of United States citizenship. He should make certain that there is a continuity of his actual *physical presence* in the United States totaling five years prior to his 28th birthday and that this five year period is not interrupted by total absences which aggregate 12 months or more.

---

⁴ We conclude from the evidence before us that the applicant had continuous *physical presence* in the United States from September 28, 1961, to the weekend of February 4, 1962. However, assuming that he visited in Mexico every Sunday between the time he established his *residence* in the United States on September 28, 1961, and the date he sought to reenter on February 4, 1962, this fact would add at the most only 19 days to his aggregate of absences which is much less than the 12 months allowed by the statute.

We conclude that Congress when adopting the phrases "shall come to the United States" and "be continuously *physically present*" intended an entirely new basis for retention of derivative citizenship completely devoid from the technical requirement of the term *"residence"* which they had formerly used. An order will be entered admitting the applicant as a United States citizen. (Emphasis supplied.)

**ORDER:** It is directed that the appeal be and the same is hereby sustained; the applicant's admission as a United States citizen as of February 4, 1962, is hereby authorized.